**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. _____

SHANITA TAYLOR,
and those similarly situated;

 Plaintiffs,

v.

REGIONAL TRANSPORTATION DISTRICT, and
FIRST TRANSIT, INC.,

 Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

**INTRODUCTORY STATEMENT**

1. This case is about Regional Transportation District's (RTD's) and First Transit, Inc.'s (First Transit's) admitted policy of automatically denying employment to potential bus drivers with more than ten points on their driver's licenses, whether or not those points arise from violations that might bear on an applicant's ability to drive safely.

2. That policy is described here as the "automatic denial" policy.

3. People of color are disproportionately likely to be the subject of traffic stops and are disproportionately likely to be ticketed for minor traffic violations, which may increase the points on a driver's record.

4. Therefore, Defendants' automatic denial policy has a disparate impact on people of color and violates Title VII of the Civil Rights Act of 1964.

5. Although Defendants may permissibly consider an applicant's driving record in evaluating her application to be a bus driver, they must do so through an individualized

assessment of each applicant's driving record to determine whether the record has a bearing on the applicant's capacity to drive safely and effectively as a bus driver for RTD.

6. Plaintiff Shanita Taylor is a black African American woman who lives in the Denver area.

7. Ms. Taylor worked hard to obtain her commercial driver's license because she believed it would allow her to obtain jobs that paid decent wages and provided good benefits.

8. When she applied to work for RTD and First Transit as a bus driver, however, Ms. Taylor was denied employment due to no other reason than that her driving record had more than 10 points in the preceding seven years.

9. The vast majority of those points arose from violations that have no bearing on Ms. Taylor's ability to drive safely or effectively for RTD, but Defendants did not undertake an individualized assessment of Ms. Taylor's driving record.

10. Ms. Taylor brings this case, on behalf of herself and others similarly situated, to obtain damages and other relief for the wrongful denial of her application for employment as a bus driver and an injunction that would require RTD and First Transit to perform an individualized assessment of each applicant's driving record.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

12. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District, where RTD is located and where First Transit operates its buses contracted with RTD.

**ADMINISTRATIVE EXHAUSTION**

13. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants First Transit, Inc., (Charge No. 541-2019-00686) and RTD (Charge No. 541-2019-00603) alleging illegal discrimination

14. Plaintiff received Notices of Right to Sue from the EEOC on September 25, 2019 on each of her Charges of Discrimination.

15. Both of the foregoing Charges were filed on behalf of the Plaintiff Charging Party and all those similarly situated.

16. Plaintiff is a member of the group of those similarly situated to Plaintiff for purposes of Title VII.

17. Accordingly, Plaintiff, and all others similarly situated, have exhausted their administrative remedies and this action is timely filed as a Rule 23 class action on their behalf.

**PLAINTIFF**

18. Plaintiff is an adult black African American woman.

19. At all times material to the allegations of the complaint, Plaintiff was domiciled in the District of Colorado.

20. While in Colorado, Plaintiff applied to work as a bus driver for Defendants RTD and First Transit.

21. Defendants RTD and First Transit denied Plaintiff employment to work as a bus driver for RTD and First Transit.

**DEFENDANTS**

22. RTD is the regional agency responsible for providing public transportation to the metropolitan Denver area.

23. RTD's principal place of business is in Colorado.

24. RTD has a fleet of more than 1,000 buses. Many of them are RTD-owned and operated, and many are leased to private carriers.

25. Defendant First Transit, Inc., is an Ohio corporation with its principal place of business in Ohio.

26. First Transit has a contract with RTD to operate more than 100 of RTD's buses and to help hire and manage more than 300 of RTD's employees in Colorado.

## STATEMENT OF FACTS

27. Under Colorado law, drivers may be assigned a certain number of "points" per traffic violation.

28. Points may be assigned for a range of violations from speeding, to driving without proof of insurance, to driving with a defective headlamp.

29. There is abundant evidence that people of color are disproportionately likely to be pulled over in a traffic stop and disproportionately likely to be cited for traffic violations of all kinds, including minor traffic violations.

30. In official postings advertising bus driver positions, RTD has announced that it will not accept job applicants who have "more than five points assessed against [their] motor vehicle record in the past two years" and "not more than ten points on the seven year record."

31. First Transit's contract with RTD specifies that First Transit may not hire bus drivers to drive for RTD and First Transit unless those drivers meet certain criteria including that they may not have more than ten points on their license in the preceding seven years.

32. Pursuant to its contract with RTD, First Transit applies the automatic denial policy when it jointly hires and employs RTD drivers.

33. Ms. Taylor obtained her CDL in February 2017.

34. In 2017, after she obtained her CDL, Ms. Taylor applied to work as a bus driver with RTD.

35. RTD informed Ms. Taylor that she could not obtain employment as a bus driver because she had more than 10 points assessed against her driving record in the preceding seven-year period.

36. Those points including points for driving an unsafe vehicle, driving with defective headlamps, and failing to provide proof of insurance.

37. In 2018, Ms. Taylor saw an advertisement for work as an RTD bus driver through First Transit.

38. The advertisement specified that applicants did not need to have a CDL to obtain employment as an RTD bus driver.

39. Because RTD and First Transit were apparently not requiring a CDL to obtain employment, Ms. Taylor assumed that the points on her driving record would also not prevent her from obtaining employment, especially because the vast majority of the points on her license related to her vehicle being defective or not having proof of insurance.

40. In March 2018, Ms. Taylor submitted her application to First Transit to apply as a bus driver for RTD and First Transit.

41. First Transit granted Ms. Taylor an interview for the position.

42. In the interview, First Transit did not ask Ms. Taylor about her driving record.

43. Ms. Taylor received a contingent offer from RTD and First Transit by email after her interview.

44. However, on April 18, 2018, Ms. Taylor received another letter by email rejecting her from the position. She also received a similar letter by mail.

45. At the time Ms. Taylor applied for a position with RTD in 2017, none of the points on her record were from convictions for moving violations in the prior seven years.

46. At the time Ms. Taylor applied for a position with RTD and First Transit in March 2018, none of the points on her record were from convictions for moving violations in the prior seven years. Rather, six were for driving a defective vehicle, eight were for not having proof of insurance or driving without insurance, and one was for defective headlamps.

47. Ms. Taylor believes that were she white, she would not have received many of the points on her driving record.

48. For example, Ms. Taylor was assessed points for not having proof of insurance when two police cars pulled her over for no clear reason after having followed her out of a convenience store parking lot.

49. Had RTD and First Transit performed an individualized assessment of Ms. Taylor's driving record, she would not have been denied employment with RTD and First Transit.

50. Were it not for the automatic denial policy, Ms. Taylor would apply in the future for a bus driver position with RTD or with First Transit to work for First Transit and RTD.

## RULE 23 CLASS ALLEGATIONS

51. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully rewritten herein.

52. Plaintiff asserts her Count I as a Fed R. Civ P. 23 class action on their own behalf and on behalf of classes for which they seek certification.

53. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the classes as follows:

**DAMAGES CLASS:**

ALL PEOPLE WHO IDENTIFY AS BLACK OR LATINO AND WHO HAVE APPLIED TO RTD OR FIRST TRANSIT AS A BUS DRIVER BUT WHOSE APPLICATIONS WERE REJECTED BECAUSE THEY HAD MORE THAN TEN POINTS ON THEIR DRIVER'S LICENSE IN THE SEVEN YEARS PRECEDING THEIR APPLICATION

**INJUNCTION CLASS:**

ALL PEOPLE WHO IDENTIFY AS BLACK OR LATINO WHO HAVE MORE THAN TEN POINTS ON THEIR DRIVER'S LICENSE IN THE PRIOR TEN YEARS AND WHO WOULD APPLY FOR EMPLOYMENT AS A BUS DRIVER WITH RTD OR FIRST TRANSIT WERE IT NOT FOR DEFENDANTS' AUTOMATIC DENIAL POLICY

54. The classes are so numerous that joinder of all potential class members is impracticable.

55. There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants' policy and practice of automatically rejecting applicants based on the number of points on their driving records violates Title VII because it has a disparate impact on black and Latino applicants.

56. The class claims asserted by Plaintiff are typical of the claims of all the potential Class Members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of relatively low-wage, minority bus driver applicants, like the class members here, who are unlikely to seek, or be able to retain, legal representation on their own.

57. Plaintiff will fairly and adequately protect and represent the interests of the class. She applied to work for Defendants and was a victim of the same violations of law as the other class members, including violations of the federal anti-discrimination laws.

58. Plaintiff is represented by counsel experienced in litigating employment claims.

59. The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

60. Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent federal laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

61. Plaintiff is unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

62. Plaintiff is unaware of any pending litigation commenced by putative class members.

63. It is desirable to concentrate this litigation in this forum because the positions applied for existed in this jurisdiction and Plaintiff is domiciled in this jurisdiction.

64. This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of these discrimination claims to both class litigation and the use of representative testimony and representative documentary evidence.

## COUNT I:
## DISCRIMINATION ON THE BASIS OF RACE AND COLOR, TITLE VII, 42 U.S.C. § 2000E *ET SEQ.*

**Plaintiff and the Rule 23 Damages Class and Rule 23 Injunction Class vs. All Defendants**

65. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint.

66. Plaintiff is black and African America and within the classes protected by Title VII.

67. Defendants First Transit and RTD are each an employer for purposes of Title VII.

68. Plaintiff applied to work for Defendant RTD in 2017 and 2018.

69. In 2018, Plaintiff applied to work for Defendant First Transit to be jointly employed by RTD and First Transit.

70. Defendants rejected Plaintiff's applications to work for RTD and First Transit.

71. Both Defendants adopted a specific policy and/or practice that significantly disparately impacted Plaintiff and those similarly situated based on their race and national origin.

72. RTD has a policy and/or practice of rejecting applicants applying for bus driver positions based on the number of points on their driving record without considering the source or type of violation resulting in the points.

73. First Transit employs the same policy and/or practice when hiring for the positions it manages through its contract with RTD.

74. RTD and First Transit's automatic denial policy has a disparate impact on minorities because people of color are stopped at disproportionately higher rates compared to white drivers.

75. Defendants have no legitimate business justification for this policy and/or practice.

76. One or more alternate practices that would not cause a significant disparate impact would equally meet Defendants' business needs.

77. Alternate practices include evaluating the type and source of the violations giving rise to points on applicants' driving records when determining whether an applicant should be rejected based on their driving records.

78. RTD and First Transit's use of points adversely impacts job opportunities for minority candidates.

79. RTD and First Transit's actions described herein were intentional and taken with malice and with reckless indifference to Plaintiff's federally protected rights.

80. Defendants failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

81. As a direct and proximate cause of Defendants' discriminatory actions and conduct, Plaintiff suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney's fees and costs.

## **DEMAND FOR JURY TRIAL**

82. Plaintiff demands a trial by jury for all issues so triable.

## **PRAYER FOR RELIEF**

83. Plaintiffs respectfully request an Order from this Court:

a. Certifying the Rule 23 classes, naming the named Plaintiff class representative, and naming Plaintiff's counsel class counsel;

b. granting judgment in favor of Plaintiff and against all Defendants;

c. awarding Plaintiff and the Rule 23 classes their damages and penalties under state laws;

d. awarding Plaintiff and those similarly situated their costs;

e. awarding Plaintiff and those similarly situated their attorney's fees;

f. awarding Plaintiff and members of the classes all appropriate equitable and injunctive relief;

g. granting such other relief as this Court deems just and proper;

h. injunctive relief prohibiting Defendants from future discriminatory and illegal practices as described herein and requiring Defendants to adopt policies and procedures to eradicate the effects of past discriminatory and illegal practices;

i. compensatory damages, including for emotional distress, as allowed by law;

j. punitive, exemplary, and liquidated damages as allowed by law;

k. awarding Plaintiffs and those similarly situated prejudgment and post-judgment interest, when allowable by law.

Respectfully submitted this 23rd day of December 2019.

*s/David H. Seligman*
David H. Seligman
Juno Turner
Brianne Power
Towards Justice

11

                    1410 High St., Suite 300  
                    Denver, CO 80218  
                    Tel.: 720-239-2606  
                    Email: david@towardsjustice.org  
                          juno@towardsjustice.org  
                          brianne@towardsjustice.org  
                    *Attorneys for Plaintiffs*

Address for Plaintiff:

Shanita Taylor  
c/o Towards Justice  
1410 High St., Suite 300  
Denver, CO 80218